IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Earl Joseph Markey, III,                    :
                 Appellant          :
                                       :
           v.                             :  No. 1044 C.D. 2024
                                       :  Submitted: June 3, 2025
Yardley Borough Zoning Hearing        :
Board                                   :

BEFORE:    HONORABLE RENÉE COHN JUBILERER, President Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge (P.)
                  HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT           FILED:  August 28, 2025

         Earl Joseph Markey, III (Objector), *pro se*, appeals an order of the Court of Common Pleas of Bucks County (trial court) affirming the decision of the Yardley Borough Zoning Hearing Board (Zoning Board) to grant variances to Abrams Hebrew Academy (Landowner) to allow it to expand the school's outdoor recreation area onto an adjoining property zoned for industrial use.  On appeal, Objector argues that the Zoning Board erred by granting the variances without proof of unnecessary hardship, which is required under the Yardley Borough's Zoning Ordinance.[1]  Concluding that the trial court properly applied the *de minimis* variance doctrine, we affirm the trial court.

---

[1] The Zoning Ordinance, adopted on February 16, 1982, *as amended*, is Chapter 27 of the Borough of Yardley Code of Ordinances.  *Available at*: https://ecode360.com/YA0910 (last visited August 27, 2025).

**Background**

Since 1981, Landowner has owned and operated a private elementary school located at 31 West College Avenue in Yardley Borough (Borough). Approximately 2.41 acres in size, the school is located in the Borough's Residential/Recreational zoning district (RR District), which permits a private school use by right.

In 2022, Landowner entered into a 30-year lease with ML7 Yardley Partners LP (Yardley Partners), which owns the adjoining property at 19 West College Avenue that is located in the Borough's Industrial zoning district (I-1 District). The lease covers 0.34 acres of Yardley Partners' property that will be used, along with Landowner's property, to create an outdoor synthetic running track, a ball field with terraced seating, and a playground (Project). Reproduced Record at 4a (R.R. __). The lease does not permit the erection of a permanent structure on the 0.34-acre parcel. The rest of Yardley Partners' property is being used for office suites, a brewery, and a barbeque-style restaurant. Objector Brief at 8.

Landowner requested a review of the site plans for the Project. By letter of October 29, 2023, the Borough's zoning officer advised that two variances were required:

1. (§2[7]-412.1) . . . . The zoning district, I-1, does not permit a Private School use by-right and therefore would require a variance from the Zoning [] Board[.]

2. (§27-501.2.C) A 15ft Class B buffer is required for private schools. The development of the expanded playground area would require to clearly delineate this Class B buffer.

R.R. 6a. The first provision cited by the zoning officer did not permit a school use in the I-1 District, and the second provision requires a school to place a 15-foot

2

buffer along its boundary with residential structures or zones. ZONING ORDINANCE, §§27-412.1, 27-501.2.C.[2]

Landowner applied for variances from each provision of the Zoning Ordinance. The Zoning Board scheduled a hearing and granted Objector, who lives across the street from the school, party status.

Landowner first presented testimony from Joseph Glassman, the school's vice-president. He testified that the school's existing outdoor recreation area is inadequate, and the school's existing parcel cannot accommodate an expanded recreational area. The proposed track and ball field will be located on both the school property and the leased property. Glassman testified that the school hoped to "stand out by having improved physical education." Notes of Testimony (N.T.), 11/27/2023, at 27; R.R. 62a.

Landowner also offered the testimony of Anthony T. Brunkan, a professional engineer. He testified about proposed stormwater management devices; water retention and runoff data; backfill requirements for the proposed terrace seating area; the landscaping improvements; the grading; the fence to be erected along the edge of the leased property; the retaining walls to be constructed; and the construction and maintenance of the water retention basins. Brunkan testified that the Project will improve stormwater management in the surrounding area.

Several neighbors made comments and asked questions, but they did not offer testimony under oath or any documentary evidence. Objector offered no evidence.

The Zoning Board granted the variances with three conditions: (1) Landowner had to prepare a maintenance agreement with the Borough for the

---

[2] The text of these provisions of the Zoning Ordinance is set forth in the Opinion, *infra* at 11-13.

3

stormwater management devices; (2) the Borough had to make available to the public any hydraulic reports done on the stormwater management devices; and (3) Landowner had to comply with all future requirements and recommendations of the Borough engineer and the Bucks County Conservation District. Zoning Board Decision at 9-10.

In granting the variances, the Zoning Board found that the school's existing "outdoor recreation area resembles a mud field when wet, with little grass or other vegetation, and is devoid of any play structures, ball fields or other recreational facilities of any kind." Zoning Board Decision at 3, Finding of Fact No. 6. The Project will combine the existing recreation area with the 0.34-acre leased property to create a new recreation facility that will be "fence[d] in" but not include a 15-foot buffer zone between the leased parcel and Landowner's parcel. *Id*., Finding of Fact No. 7. The Zoning Board found the buffer requirement unnecessary because "the expanded area will include landscaping, decorative walls, and play areas that blend the existing and proposed vegetation." *Id*., Finding of Fact No. 9. The Zoning Board found that Landowner's new outdoor recreation area addressed, "to the greatest extent possible, every legitimate environmental and safety concern raised by the Board [and] nearby residents[.]" Zoning Board Decision at 8.

The Zoning Board concluded that Landowner demonstrated that it will suffer an unnecessary hardship should the variances be denied; the proposed use of the 0.34-acre parcel in the I-1 District would not adversely alter the essential character of the neighborhood or be detrimental to the public welfare; and the requested variances were the minimum variances required to afford relief. "That a private school is not a permitted use in the I-1 Industrial District is simply of no reasonable concern under the facts of this case." Zoning Board Decision at 9. The

4

15-foot buffering requirement between a private school and the adjacent property worked an unnecessary hardship on Landowner because the new recreation area will open the boundary with Yardley Partners, where the buffer zone would otherwise be located. Even so, extensive landscaping within the fenced recreation area will effect a screen. The Zoning Board recognized that "there are serious water runoff issues in the area . . . where the [s]chool is located, due principally to topographical and impervious surface issues in and around the [s]chool." *Id*. at 7. Brunkan credibly testified that the water management devices installed as part of the Project will make the water runoff "both less and slower than presently occurs." *Id*. at 8. The Zoning Board opined that its conditions will also address this issue.

The Zoning Board acknowledged that Landowner did not submit its plans to the Borough's Planning Commission but decided "not [to] hold it against [Landowner]" because "[Landowner] was specifically advised by the Borough that it need not do so." Zoning Board Decision at 8.

Objector appealed to the trial court, which affirmed the Zoning Board without taking evidence.

### Trial Court Opinion

In its Pa.R.A.P. 1925(a) opinion, the trial court "categorized" Landowner's requested zoning variances as "dimensional and *de minimis* in nature." Trial Court Op. at 8. The deviation was minor because the adjoining 0.34-acre parcel was vacant and was not presently in use. Expansion of the school's recreation area onto the adjoining parcel provides the school with "an enhanced and much needed" improvement. *Id*. at 7. Strict adherence to the Zoning Ordinance would cause an unnecessary hardship to the school, which needs to provide a recreational facility for its students. The trial court concluded that the variance application should be

5

governed by the lower burden of proof established in *Hertzberg v. Zoning Hearing Board of Adjustment of City of Pittsburgh*, 721 A.2d 43 (Pa. 1998). Trial Court Op. at 8-9. It agreed with the Zoning Board's finding that the essential character of the neighborhood in which the property is located will not be altered. Brunkan credibly testified that the stormwater runoff issues will be alleviated by the stormwater management devices to be installed for the Project.

The trial court rejected Objector's claim that his due process right was violated by being precluded from filing a reply brief. Citing Pennsylvania Rule of Appellate Procedure 2113(a),[3] the trial court observed that a reply brief is not the opportunity to raise additional issues on appeal. Trial Court Op. at 13.

Objector now appeals to this Court.

---

[3] Pa.R.A.P. 2113(a). It states:

> **(a) General Rule.** In accordance with Pa.R.A.P. 2185(a) (time for serving and filing briefs), the appellant may file a brief in reply to matters raised by appellee's brief or in any *amicus curiae* brief and not previously addressed in appellant's brief. If the appellee has cross-appealed, the appellee may file a similarly limited reply brief. A reply brief shall contain the certificates of compliance required by Pa.R.A.P. 127 and Pa.R.A.P. 2135(d).

## Appeal

On appeal,[4] Objector raises eight issues for review, which we combine into four for clarity.[5] First, Objector argues that the trial court erred in upholding

[4] Where, as here, the trial court did not take any additional evidence, appellate review of the decision of the Zoning Board is limited to determining whether the Zoning Board abused its discretion or committed legal error. *Township of Exeter v. Zoning Hearing Board of Exeter Township*, 962 A.2d 653, 659 (Pa. 2009). "An abuse of discretion occurs when the board's findings are not supported by substantial evidence in the record. Substantial evidence is that relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Id.* (quoting *Borough of Fleetwood v. Zoning Hearing Board of Borough of Fleetwood*, 649 A.2d 651, 653 (Pa. 1994)). However, this Court may not substitute its interpretation of the evidence for that of the Zoning Board. *Tidd v. Lower Saucon Township Zoning Hearing Board*, 118 A.3d 1, 13 (Pa. Cmwlth. 2015). It is the Zoning Board's function to weigh the evidence before it, and it is "the sole judge of the credibility of witnesses and the weight afforded their testimony." *Id.* The Court "must view the evidence in a light most favorable to the prevailing party, who must be given the benefit of all reasonable inferences arising from the evidence." *Id.*

[5] The eight issues are:

1. Did the [trial court] commit an error [of] law or alternatively abuse its discretion by affirming a use variance to operate a private school in [the I-1 district] because the variance is dimensional and de minimis?

2. Did the [trial court] commit an error [of] law or alternatively abuse its discretion by affirming a dimensional variance to not require any buffer yard whatsoever because the variance is de minimis?

3. Did the [trial court] violate [Objector's] due process rights, commit an error [of] law, or alternatively abuse its discretion by not finding that the Zoning Officer and/or the Zoning [] Board committed an error of law, abused its discretion, or violated [Objector's] due process rights by failing to require a new variance application from [Landowner] for relief from the impervious surface requirements?

4. Did the [trial court] violate [Objector's] due process rights, commit an error [of] law, or alternatively abuse its discretion by not finding that the Zoning Officer and/or the Zoning [] Board committed an error of law, abused its discretion, or violated [Objector's] due process rights by failing to refer [Landowner's] application to the Yardley Borough Planning Commission?

5. Did the [trial court] violate [Objector's] due process rights, commit an error [of] law, or alternatively abuse its discretion by not finding that the Zoning Officer and/or the Zoning [] Board committed an error of law, abused its discretion, or

7

the Zoning Board's grant of the variances because Landowner did not meet its burden of demonstrating unnecessary hardship as required by Section 27-1326 of the Zoning Ordinance and Section 910.2 of the MPC.[6]  Second, Objector contends

violated [Objector's] due process rights by failing to require a variance application for removal of the 50-foot buffer yard required for industrial use under Section 27-747.B.2 of the [] Zoning [Ordinance][]?

6. Did the [trial court] commit an error of law or abuse its discretion by affirming and not finding that the [] Zoning [] Board decision was not supported by substantial evidence to satisfy all the requirements to obtain the [r]equested [r]elief pursuant to Section 27-1326 of the [] Zoning [Ordinance] and Section 910.2 of the Pennsylvania Municipalities Planning Code [(MPC), Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2]?

7. Did the [trial court] commit an error of law or abuse its discretion by not finding that the [] Zoning [] Board exceeded its authority or abused its discretion by requiring [Landowner] and [the] Borough to enter into a maintenance agreement, [the] Borough to release records, and [Landowner] to comply with future requirements and recommendations?

8. Did the [trial court] violate [Objector's] due process rights by denying him the right to file a reply brief or alternatively his right to move for leave of court to file a reply brief?

Objector Brief at 2-6.

Dawn Perlmutter, owner of adjacent property and intervenor before the Zoning Board and now before this Court, filed a brief that incorporated by reference Objector's brief in its entirety.

[6] The Zoning Ordinance's standards for a zoning ordinance variance came from Section 910.2 of the MPC, 53 P.S. §10910.2.  Section 27-1326 of the Zoning Ordinance states, as follows:

1. Applicability.  Upon appeal from a decision by the Zoning Officer, the Zoning Hearing Board shall have the power to vary or adapt the strict application of any of the dimensional requirements of this Chapter where, by reason of exceptional narrowness, shallowness or shape of a specific piece of property at the time of the enactment of this Chapter or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition on such piece of property, the strict application of any regulation enacted under this Chapter would result in peculiar and exceptional and undue hardship upon the owner of such property, but in no other case.

2. Conditions, Requirements and Standards. The Board shall hear requests for variances where it is alleged that the provisions of this Chapter inflict unnecessary

8

that the trial court erred because the Zoning Board lacked jurisdiction to impose conditions that related to stormwater management. Third, Objector argues that the Zoning Board erred by failing to refer Landowner's applications to the Borough's Planning Commission, by not requiring additional variances from the impervious surface requirements, and by exempting Landowner from the separate buffer zone required to screen a development placed in an industrial zoning district. Finally, Objector argues that the trial court violated his due process rights by precluding him from filing a reply brief.

---

hardship upon the applicant. The Board may by rule prescribe the form of application and may require preliminary application to the Zoning Officer. The Board may grant a variance, provided that all of the following findings are made where relevant in a given case:

A. That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this Chapter in the neighborhood or district in which the property is located.

B. That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this Chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

C. That such unnecessary hardship has not been created by the applicant.

D. That the variance, if authorized, will neither alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

E. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

3. In granting any variance, the Board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purpose of this Chapter.

ZONING ORDINANCE, §27-1326.

9

# I. *De Minimis* Variance

In his first issue, Objector argues that the trial court erred in upholding the Zoning Board's grant of the variance to allow land zoned industrial to be used for a private school. This was a use variance, not a dimensional variance as stated by the trial court. Further, the Zoning Board did not state that Landowner's variance request was *de minimis*, and it could not because the use of land in an industrial district for a school "is undoubtedly substantial." Objector Brief at 13. In any event, using the *de minimis* doctrine to permit a use variance "should be rare and limited to extraordinary situations." *Id.* (quoting *Soland v. Zoning Hearing Board of East Bradford Township*, 311 A.3d 1208, 1214 (Pa. Cmwlth. 2024), *appeal granted*, 333 A.3d 308 (Pa. 2025)). Likewise, the Zoning Board did not find the variance from the 15-foot buffer requirement to be *de minimis*.

Objector argues that the Zoning Board erred in finding that Landowner would suffer an unnecessary hardship without relief from the Zoning Ordinance. Unnecessary hardship must be tied to the unique physical conditions of the applicant's property. *Larsen v. Zoning Board of Adjustment of City of Pittsburgh*, 672 A.2d 286, 290-91 (Pa. 1996). Landowner's variance application referred to "the location of existing structures and limited remaining land[;]" this is not unique but "common among excessively developed land." Objector Brief at 18. Further, the water runoff issue had nothing to do with the variance request. Objector contends that a variance was not necessary to enable the reasonable use of either the school property or Yardley Partners' property.

In response, the Zoning Board argues that the variance sought by Landowner was "a *use* variance in name only;" the relief was "solely dimensional in nature" because the school was simply extending its permitted use "onto a small

portion of an adjoining parcel that happens to be zoned differently." Zoning Board Brief at 8 (emphasis in original). Even assuming that Landowner was seeking a use variance, the Zoning Board contends that it had discretion to allow the school to use a small portion of an adjoining property zoned for industrial use. The only "*legitimate* concern" raised by Landowner's application had to do with water runoff, which has been addressed by the conditions imposed on the variances. Zoning Board Brief at 9 (emphasis in original).

Landowner, an intervenor, responds that the variances were needed to provide relief from an unnecessary hardship. A reasonable school use of land requires outdoor recreation opportunities. Here, the variance requested is "extremely limited" in size and will afford relief with the least modification possible. Landowner Brief at 9 (emphasis omitted). The leased property is vacant, and the minimal improvements for the recreation use can be easily removed to take the parcel back to its current state as vacant land. Landowner maintains that the variances have no adverse effect on the public welfare but will advance the public welfare by providing an outdoor recreation area needed by its approximately 200 children.

We start with a review of the provisions of the Zoning Ordinance. Section 27-412.1 of the Zoning Ordinance provides:

> Uses Permitted by Right. In an I-1 District, the following uses are permitted by right, and no other:
>
> > A.   A scientific or industrial research, engineering, testing or experimental laboratory or similar establishment for research, training or product development, provided that there is no commercial production of any commodity or substance.
> > B.   Printing, Publishing, Lithographic and Similar Processes. The manufacturing, fabrication, assembly, processing and packaging of natural and man-made

11

materials, chemicals, synthetics and other organic and inorganic products[.]

. . . .

C.    Ministorage. Such use shall include the storage of items, limited to personal property generally stored in residential structures, within a warehouse structure as miniwarehouse structures[.]

. . . .

D.    Wholesale/Warehousing. These uses include wholesale distribution and/or warehousing and/or storehousing.

E.    Contracting. This use shall include offices and supply shops, such as building, cement, electric, heating, plumbing, masonry, painting and roofing.

F.    Lumberyard. Such use shall include a lumberyard but shall not include a planing mill.

G.    *Indoor Athletic Club. Such uses shall include buildings for indoor court games, for games played with a ball, such as racquetball, handball, squash, tennis, basketball and volleyball, and facilities related thereto.*

H.    *Institutional uses shall be public utilities.*

I.    Mining[.]

. . . .

ZONING ORDINANCE, §27-412.1 (emphasis added).  In short, an outdoor recreational facility for an institution that is a school is not a permitted use.

The Zoning Ordinance establishes dimensional restrictions on schools. It states, in relevant part, as follows:

Requirements for private schools shall be as follows:

A.    Impervious surface ratio (percentage of lot): 50% maximum.

B.    Minimum lot area: two acres.

C.    *Buffer yard: see Part 7J on Class B screening.*

12

. . . .

Z<small>ONING</small> O<small>RDINANCE</small>, §27-501.2 (emphasis added).  In turn, Part 7J states as follows:

1.      Buffer yards and/or screening shall be required in the following cases:

. . . .

        B.      Nonresidential developments.

        (1)     All commercial developments in the C-1 and C-2 Districts shall provide a fifteen-foot buffer yard along all boundaries adjacent to a residential district.  Screening shall be required in accordance with §27-748 on Class C screening.

        (2)     *All industrial developments shall provide a fifty-foot buffer yard, including yard areas, along all boundaries adjacent to residential or commercial structures or zones.* Screening shall be required in accordance with §27-748 on Class B screening.  In addition, a six-foot high cedar or spruce board-on-board (shadowbox) fence shall be required to be placed along the perimeter of the lot adjacent to residential or commercial structures or zones.

        (3)     Buffer yards shall be required for institutional uses in the following cases:

        (a)     A ten-foot buffer yard, exclusive of required yard areas, shall be provided along all the boundary lines of institutional uses, adjacent to industrial or commercial structures or zones.  Screening shall be required in accordance with §27-748 on Class C screening.

        (b) *A fifteen-foot buffer yard, exclusive of required yard areas, shall be required along the boundary lines of institutional uses adjacent to residential structures or zones.*

13

> *Screening shall be required in accordance with §27-748 on Class B screening.*[7]

    . . . .

Zoning Ordinance, §27-747 (emphasis added).

      "The de minimis doctrine is an extremely narrow exception to the heavy burden of proof which a party seeking a variance must normally bear." *Swemley v. Zoning Hearing Board of Windsor Township*, 698 A.2d 160, 162 (Pa. Cmwlth. 1997) (quoting *King v. Zoning Hearing Board of Borough of Nazareth*, 463 A.2d 505, 505 (Pa. Cmwlth. 1983)). "This exception may be applied where (1) only a minor deviation from the zoning ordinance is sought and (2) rigid compliance with the ordinance is not necessary for the preservation of the public interests sought to be protected by the ordinance." *Swemley*, 698 A.2d at 162. "The determination of whether or not the *de minimis* doctrine applies requires careful consideration of both of these factors." *Id*. "There are no set criteria for determining what will be considered *de minimis*." *Pequea Township v. Zoning Hearing Board of Pequea Township*, 180 A.3d 500, 505 (Pa. Cmwlth. 2018) (quoting *Hawk v. City of Pittsburgh Zoning Board of Adjustment*, 38 A.3d 1061, 1066 (Pa. Cmwlth. 2012)). "[T]he decision of whether to grant a *de minimis* variance is left to the discretion of the local zoning board." *Pequea Township*, 180 A.3d at 505 (quoting *Alpine, Inc. v. Abington Township Zoning Hearing Board*, 654 A.2d 186, 191 (Pa. Cmwlth. 1995)). Where the *de minimis* doctrine applies, "there is no need to resort to any other theory of relief" from the zoning restriction. *Nettleton v. Zoning Board of Adjustment of City of Pittsburgh*, 828 A.2d 1033, 1038 (Pa. 2003).

---

[7] In actuality, Section 27-747 of the Zoning Ordinance does not require a 15-foot buffer of Landowner's expanded recreation area because the school is not adjacent to residential structures or zones; rather, it is adjacent to an industrial zone.

In *West Bradford Township v. Evans*, 384 A.2d 1382 (Pa. Cmwlth. 1978), the landowners sought to subdivide a 0.847-acre lot into two smaller lots of 0.5 acres and 0.347 acres, respectively. The landowners wanted to retain the 0.347-acre tract and convey the 0.5-acre tract. The township supervisors denied the request due to a lack of public sewage. The landowners then requested a variance, and the zoning board granted the application on the condition that the 0.347-acre tract be burdened with a sewage easement in favor of the 0.5-acre tract until such time as public sewage becomes available. The common pleas court affirmed, as did this Court. We held that the variance was appropriate even though the traditional grounds for a variance may not have been met because the variance sought was *de minimis*. The objection of the township was related to sewage problems, and this was resolved by the express conditions attached to the variance.

In this Court's more recent decision in *Soland*, 311 A.3d 1208, the zoning board granted a variance to allow an unoccupied tenant house, a Class II historic property, to be used for a bed and breakfast (B&B). The zoning ordinance allowed only a Class I historic property to be used for a B&B. The zoning board found the deviation *de minimis* and granted a variance. The common pleas court reversed, holding that a use variance can never be *de minimis*. In reversing the common pleas court, we held that the zoning board acted within its discretion. The township zoning officer testified that a B&B use has been authorized for Class I historic buildings as a way to ensure their use. The entire 10-acre property was a Class I historic property, even though the tenant house itself was not so classified. The zoning board found the proposed use fell within the intent of the ordinance even though it was technically barred. In light of the above, we agreed that the variance requested was "more technical than substantial." *Id*. at 1214. We cautioned,

15

however, that "[a]pplication of the *de minimis* doctrine to use variance requests would, and should, be rare and limited to extraordinary situations like the one at bar." *Id*.

Here, Landowner sought two variances, one to expand its school's outdoor recreation area onto the adjoining property zoned for industrial use and another for relief from the 15-foot buffer yard private schools must create along their property line. ZONING ORDINANCE, §§27-412.1, 27-747.1.B(3)(b). The Zoning Board found that allowing the school's recreation area to be placed on a 0.34-acre parcel zoned for industrial use is "of no reasonable concern[.]" Zoning Board Decision at 9. It found that the proposed use would not adversely alter the character of the neighborhood or be detrimental to the public welfare, and the requested variances represented the minimum needed to afford relief. The 15-foot buffer zone is intended to screen a school from its immediate adjacent neighbor and would make it impossible to have the school's new recreation area span both properties. In any case, the Project includes "landscaping, decorative walls, and play areas that blend [into] the existing and proposed vegetation." Zoning Board Decision at 3, Finding of Fact No. 9. Stated otherwise, the recreation area, a school use, will be effectively screened from the remainder of Yardley Partners' property.

Landowner requested a variance to operate an outdoor recreation area on land zoned for industrial use. Landowner did not request a dimensional variance, which is a "reasonable adjustment from area and space requirements in order to develop a *permitted* use" but, rather, it sought to put land zoned industrial to outdoor recreation, which is not permitted in the I-1 District. *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment, City of Philadelphia*, 787 A.2d 1123, 1126 (Pa. Cmwlth. 2001) (emphasis in original). Contrary to the trial

16

court's summary, Landowner's variance application was in the nature of a use variance.

Nevertheless, we conclude that the trial court properly upheld the Zoning Board's grant of the variances under the *de minimis* doctrine. The proposed outdoor recreation area will occupy only a small portion of the adjoining property zoned for industrial use. The recreation area will be "fence[d] in" and "include landscaping, decorative walls, and play areas that blend [into] the existing and proposed vegetation." Zoning Board Decision at 3, Finding of Fact Nos. 7, 9. Notably, the Zoning Ordinance provides that an "[i]ndoor [a]thletic [c]lub" is, among others, a use permitted by right in the I-1 Industrial District. ZONING ORDINANCE, §27-412.1.G. Such a use includes "buildings for indoor court games, for games played with a ball, such as racquetball, handball, squash, tennis, basketball and volleyball, and facilities related thereto." *Id*. Here, the adjoining 0.34-acre parcel will be used for a running track and a ball field, which is a less intense use than an indoor athletic club, which is permitted by right in the I-1 District.

The Zoning Board did not use the term "de minimis" in its decision, but it made findings relevant thereto.[8] It found, specifically, that the variances sought were minor and the proposed use would not adversely alter the essential character of the neighborhood or be detrimental to the public welfare. *See generally Swemley*, 698 A.2d at 162 (*de minimis* doctrine applies where "only a minor deviation from the zoning ordinance is sought," and "rigid compliance with the ordinance is not necessary for the preservation of the public interests sought to be protected by the

---

[8] The trial court quoted a statement made at the November 27, 2023, hearing, that "this variance is probably the most de minimis use that will ever come before this Board." Trial Court Op. at 6-7 (citing N.T., 11/27/2023, at 99; R.R. 134a). However, this statement was made by Landowner's counsel, not by a member of the Zoning Board.

17

ordinance"). Stated another way, the Zoning Board applied the *de minimis* principles.

We are mindful that "[t]here are no set criteria for determining what will be considered *de minimis*," *Pequea Township*, 180 A.3d at 505 (quoting *Hawk*, 38 A.3d at 1066), and "the decision of whether to grant a *de minimis* variance is left to the discretion of the local zoning board." *Pequea Township*, 180 A.3d at 505 (quoting *Alpine, Inc.*, 654 A.2d at 191). Based on the foregoing discussion, we hold that the Zoning Board acted within its discretion in granting the variances under the *de minimis* doctrine and the trial court did not err in affirming the Zoning Board.

## II. Variance Conditions

Objector challenges the conditions that the Zoning Board imposed on the variances, which relate to the stormwater management devices Landowner will install. Objector argues that these conditions exceeded the authority of the Zoning Board, which lacks "jurisdiction to grant injunctions or impose penalties." Objector Brief at 25-26 (citing *In re Leopardi*, 532 A.2d 311, 314 (Pa. 1987)).

*Leopardi* concerned a zoning board's order to a landowner to remove an unlawful building. Our Supreme Court concluded a zoning board may not issue enforcement or remedial orders because it "does not have the delegated jurisdiction to grant injunctions or impose penalties [and] any such order would be an *ultra vires* act." *Leopardi*, 532 A.2d at 314. *Leopardi* is distinguishable.

Section 910.2(b) of the MPC provides that "[i]n granting any variance, the [zoning hearing] board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of this act and the zoning ordinance." 53 P.S. §10910.2(b). Likewise, the Zoning Ordinance provides: "In granting any variance, the [Zoning] Board may attach such reasonable conditions

and safeguards as it may deem necessary to implement the purpose of this Chapter." ZONING ORDINANCE, §27-1326.3.  The Zoning Board imposed conditions on the variances as deemed necessary to implement the Zoning Ordinance.

The trial court did not err in upholding the Zoning Board's grant of variances with conditions to Landowner.

### III.  Shortcomings in Zoning Board Adjudication

Objector argues, next, that the Zoning Board erred because its order fell short in several respects.  The Zoning Board failed to refer Landowner's variance applications to the Borough's Planning Commission as required by the Zoning Ordinance.  It states, in pertinent part, as follows:

> For all proposed uses listed below in which six or more additional parking spaces are required, *the Zoning Officer shall refer applications to the Borough Planning Commission for review* under the provisions and requirements of this Chapter:
>
> **(1)** *All institutional uses*.
> **(2)** All uses permitted in the C-1, C-2 and I-1 Districts.
> **(3)** Golf courses.
> **(4)** Land development of ground in excess of 15% of slope.
> **(5)** Conversions.

ZONING ORDINANCE, §27-1313.1.A (emphasis added).  Likewise, the Zoning Board erred by not ordering Landowner to seek variances from the maximum impervious surface ratio of 50% for a private school use.  ZONING ORDINANCE, §27-501.2.A.  In 1993, the Zoning Board granted Landowner a variance to raise the impervious surface ratio to 54.3%.  Because the Project will increase that ratio to 62.52%, Landowner needs a new variance from Section 27-501.2.A.  Finally, the Zoning Board erred by not ordering Landowner to seek a variance from the requirement that "[a]ll industrial developments shall provide a fifty-foot buffer yard, including yard

19

areas, along all boundaries adjacent to residential or commercial structures or zones." ZONING ORDINANCE, §27-747.1.B(2).

Zoning hearing boards are administrative bodies created by the legislature, and their power "is limited to that conferred expressly by the legislature, or by necessary implication." *Leopardi*, 532 A.2d at 313. Section 909.1(a)(5) of the MPC[9] confers jurisdiction on a zoning hearing board to consider, *inter alia*, "[a]pplications for variances from the terms of the zoning ordinance[.]" 53 P.S. §10909.1(a)(5). Here, the Zoning Board considered Landowner's request for two variances from the Zoning Ordinance, one to expand its school's outdoor recreation area onto the adjoining property zoned for industrial use and another for relief from the 15-foot buffer yard private schools must create along their property line.

Section 27-1313.1.A of the Zoning Ordinance, by its plain terms, requires "the Zoning Officer" to refer applications to the Borough Planning Commission where an institution will add six or more parking spaces. Here, the Borough's Zoning Officer advised Landowner that a review by the Planning Commission was unnecessary and advised, by letter, that only two variances were required for it to expand the school's outdoor recreation area. The letter did not mention impervious surface requirements or the 50-foot buffer requirement for development of land zoned industrial. The only matter before the Zoning Board was Landowner's variance request. The Zoning Board does not have jurisdiction to initiate enforcement actions or grant injunctions to Borough officials.[10] *Leopardi*, 532 A.2d at 314.

_____

[9] Added by the Act of December 21, 1988, P.L. 1329.

[10] In any event, the Zoning Board noted in its decision that "there are serious water runoff issues in the area . . . where the [s]chool is located, due principally to topographical and impervious

20

In short, the Zoning Board lacked jurisdiction to refer Landowner's application to the Planning Commission or to order Landowner to seek additional variances from the impervious surface requirements or from the 50-foot buffer requirement for developments placed in an industrial zone.

## IV. Reply Brief

Finally, Objector argues that the trial court erred in denying his request to file a reply brief. Landowner and the Zoning Board did not respond to this argument, relying on the trial court's discussion in its opinion.

Objector cites the following exchange between the trial court and the parties:

> [Trial] Court: . . . . Do either of you believe the record needs to be supplemented? []
>
> [Zoning Board Solicitor]: No, Your Honor.
>
> If I may. We all have an agreement . . . on what we would like you to do here. We all agree to submit the case on briefs. And [Objector's] brief, and intervenor Dawn Perlmutter's brief, would be due 45 days from today. Thereafter, upon receipt of those briefs, [Landowner's] and the [Z]oning [B]oard's briefs

---

surface issues in and around the [s]chool." Zoning Board Decision at 7. The Zoning Board credited Brunkan's testimony that the water management devices installed as part of the Project will make the water runoff "both less and slower than presently occurs[.]" *Id*. at 8. It is the Zoning Board's function to weigh the evidence before it, and it is "the sole judge of the credibility of witnesses and the weight afforded their testimony." *Tidd*, 118 A.3d at 13. The Zoning Board also imposed conditions on the variances to address the water runoff issue, including to enter a maintenance agreement with the Borough to maintain stormwater management devices.

Under the plain terms of the Zoning Ordinance, the 50-foot buffer yard requirement does not apply to the expanded recreation area, which consists of a running track and a ball field, and is not an "industrial development[.]" ZONING ORDINANCE, §27-747.1.B(2). Even so, the Zoning Board observed that "[t]o insist on the [Zoning] Ordinance's buffering and screening requirements" under the circumstances of this case is unnecessary particularly because Landowner will provide approximately 50 feet of landscaping within the fence of the expanded area. Zoning Board Decision at 9.

would be due 45 days from then. And then [Objector] and Ms. Perlmutter would like 15 days for a reply brief. []

[Trial] Court: . . . . I'm not a fan of reply briefs to the reply brief . . . . I'd rather have 45 days and 45 days and no reply brief. []

[Objector]: Understood. File a motion or order or ask for leave of Court. The need arises, to reply to anything else.

[Trial] Court: No, I'm not going to allow that. So make your best argument. You know what their position is, right? You each basically know what the other's position is. []

So you were at the zoning hearing board, you know what their position is, they know what your position is. I don't feel the need for any rebuttal to their reply. []

N.T., 4/1/2024, at 2-3; R.R. 161a-62a.

Where a full record is made before the local agency, a trial court reviews the appeal as an appellate court. *Cook v. City of Philadelphia Civil Service Commission*, 201 A.3d 922, 926 (Pa. Cmwlth. 2019). However, "the Pennsylvania Rules of Appellate Procedure do not apply to a trial court acting in an appellate capacity on a local agency appeal unless the county where that trial court sits has specifically adopted the Pennsylvania Rules of Appellate Procedure." *Id*. Nevertheless, "a trial court acting as an appellate court, may look to the Pennsylvania Rules of Appellate Procedure for guidance, and such points of procedure are best left to the sound discretion of the trial court." *Id*. (quoting *King v. City of Philadelphia*, 102 A.3d 1073, 1077 (Pa. Cmwlth. 2014)).

The Bucks County Court of Common Pleas has not adopted the Pennsylvania Rules of Appellate Procedure for local agency appeals.[11] In its

---

[11] The Bucks County Rule of Civil Procedure (Bucks County Rule) No. 27, titled "Appeals from Zoning Hearing Board," provides that "[r]eply brief shall be filed in accordance with Bucks County Rule of Civil Procedure 210*(d)." Bucks County Rule 210(d) provides: "The Prothonotary shall, upon receipt of all briefs, cause the same to be delivered to the court, but shall

22

Pa.R.A.P. 1925(a) opinion, the trial court cited Pa.R.A.P. 2113(a) for guidance. It provides that "the appellant *may* file a brief in reply to matters raised by appellee's brief or in any *amicus curiae* brief and not previously addressed in appellant's brief." *Id*. (emphasis added). The trial court decided that a reply brief was not necessary because the parties had been before the Zoning Board and were fully apprised of each other's legal position.

The trial court acted within its discretion. We reject Objector's argument that the trial court violated his due process rights by precluding him from filing a reply brief.

### Conclusion

We hold that the Zoning Board did not err in granting Landowner variances under the *de minimis* doctrine so that it may expand its school's outdoor recreation area to adjoining property zoned for industrial use. The Zoning Board lacked jurisdiction to refer Landowner's plan to the Borough Planning Commission or to order the Borough's zoning officer to require a variance from the impervious surface requirements and from the 50-foot buffer required for industrial property. We hold that the trial court acted within its discretion in precluding Objector from filing a reply brief and did not violate his due process rights.

For these reasons, we affirm the trial court's August 13, 2024, order.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

not docket them." Bucks County Rule 210(c) provides: "Reply briefs shall be filed with the Prothonotary and counsel for all other parties no later than one week prior to the date fixed for argument and shall be the same in number as the moving party's brief." In short, the Bucks County Rules are silent on when a reply brief is permitted in matters where the trial court acts in an appellate capacity.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Earl Joseph Markey, III, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1044 C.D. 2024 |
| | : | |
| Yardley Borough Zoning Hearing | : | |
| Board | : | |

## **O R D E R**

AND NOW, this 28th day of August, 2025, the order of the Court of Common Pleas of Bucks County, dated August 13, 2024, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita